UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 08 CR 413 |
| vs. | ) | |
| | ) | Judge Robert M. Dow, Jr. |
| ABRAM PEREZ | ) | |

## PLEA AGREEMENT

1.    This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and defendant ABRAM PEREZ, and his attorney, KENT R. CARLSON, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below.  The parties to this Plea Agreement have agreed upon the following:

### Charges in This Case

2.    The indictment in this case charges defendant with six counts of distributing a controlled substance, namely, mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

3.    Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.    Defendant fully understands the nature and elements of the crimes with which he has been charged.

### Charge to Which Defendant is Pleading Guilty

5.    By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to Count Six of the indictment.  Count Six charges defendant with distributing mixtures

containing cocaine, in violation of Title 21, United States Code, Section 841(a)(1).

### Factual Basis

6.    Defendant will plead guilty because he is in fact guilty of the charge contained in Count Six of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt:

On or about November 12, 2007, at Carpentersville, in the Northern District of Illinois, Eastern Division, defendant ABRAM PEREZ, a/k/a "Doughboy," did knowingly and intentionally distribute a controlled substance, namely, mixtures containing cocaine, a Schedule II Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1).

On November 12, 2007, defendant agreed to sell cocaine to an individual who, unbeknownst to defendant, was a cooperating witness ("CW") working under the direction and control of the Federal Bureau of Investigation ("FBI"). In particular, during communications between the CW and the defendant that day, the defendant agreed to sell to the CW one-half ounce (approximately 14.1 grams) of cocaine for $420 plus an additional one-eighth of an ounce (approximately 3.5 grams) of cocaine for $110, resulting in a total sale of approximately 17.6 grams of cocaine in exchange for $530.

Later on the afternoon of November 12, 2007, the CW, under law enforcement surveillance, traveled to the defendant's residence in Carpentersville, Illinois. The CW met with the defendant inside of the residence. Inside of the residence, the defendant gave approximately 16.6 grams of a mixture containing cocaine to the CW in exchange for $530 in United States Currency.

-2-

7.    Defendant also acknowledges that for the purpose of computing his sentence under the Sentencing Guidelines, the following conduct, to which he stipulates, constitutes relevant conduct under Guideline §1B1.3:

On five separate occasions between June 26, 2007, and November 8, 2007, defendant sold amounts of powder cocaine to the CW. On each of the five occasions, the sale of cocaine occurred after discussions between the CW and defendant regarding the amount of cocaine and the price that the CW would pay for the cocaine. Also on each such occasion, after the terms of the drug deal were negotiated, the CW met with the defendant at the defendant's residence in Carpentersville, Illinois, to conclude the transaction. Inside the residence or its attached garage, defendant distributed the cocaine to the CW in exchange for the agreed-upon amount of United States Currency, which had been given to the CW by the FBI. A summary of those five cocaine transactions is as follows:

| Date | Amount of Cocaine Ordered | Amount of Cocaine Received | Amount Paid |
|------|---------------------------|----------------------------|-------------|
| June 26, 2007 | 1.0 gram | 0.56 grams | $ 40 |
| July 14, 2007 | 3.5 grams | 3.4 grams | $110 |
| July 20, 2007 | 2.0 grams | 1.6 grams | $ 70 |
| October 25, 2007 | 7.0 grams | 6.6 grams | $220 |
| November 8, 2007 | 7.0 grams | 6.7 grams | $210 |

During the meeting between the CW and the defendant on June 26, 2007, the defendant possessed a firearm, namely a loaded .22 caliber Smith and Wesson, Model P22 handgun. During a meeting between the CW and the defendant on August 9, 2007, the defendant also possessed a separate .22 caliber handgun. One of the defendant's reasons for possessing the firearms was for protection of his cocaine trafficking activities.

-3-

## Maximum Statutory Penalties

8.     Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a.     A maximum sentence of 20 years' imprisonment.  This offense also carries a maximum fine of $1,000,000.  Defendant further understands that the judge also must impose a term of supervised release of at least three years, and up to any number of years, including life.

b.     In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

## Sentencing Guidelines Calculations

9.     Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines.  Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

10.    For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.     **Applicable Guidelines**.  The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing.  The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2007 Guidelines Manual.

-4-

b.    **Offense Level Calculations.**

i.    Pursuant to Guideline § 4B1.1(a), the defendant is a career offender because he was at least 18 years old at the time of the offense, the offense involved a controlled substance offense and defendant has at least two prior felony convictions for a crime of violence, namely, the convictions set forth in sub-paragraphs 10(c)(i), (ii), (iii) and (v) below. Therefore, pursuant to Guideline § 4B1.1(b), defendant's offense level is 32 because the statutory maximum sentence for the offense is 20 years imprisonment.

ii.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct.    If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine that may be imposed in this case, a two-level reduction in the offense level is appropriate.

iii.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category.** With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history category is VI.   First, defendant is a career offender under Guideline § 4B1.1(a) and, therefore, has a criminal history category of VI pursuant to Guideline § 4B1.1(b).   Second, defendant's criminal history points equal 17 and, therefore, defendant's criminal history category is VI, based upon the following:

i.      On or about July 27, 2001, defendant was convicted in the Circuit Court of Kane County (01 CF 1447) of mob action through the use of force and violence, and sentenced to 18 months' imprisonment in the Illinois Department of Corrections ("IDOC"), resulting in three criminal history points pursuant to Guideline § 4A1.1(a).

ii.      On or about July 27, 2001, defendant was convicted in the Circuit Court of Kane County (01 CF 1453) of mob action through the use of force and violence and sentenced to 18 months' imprisonment in IDOC, resulting in three criminal history points pursuant to Guideline § 4A1.1(a).

iii.      On or about January 2, 2002, defendant was convicted in the Circuit Court of Kane County (01 CF 2947) of aggravated battery with a weapon and sentenced to 24 months' imprisonment in IDOC, resulting in three criminal history points pursuant to Guideline § 4A1.1(a).

iv.      On or about March 8, 2007, defendant was convicted in the Circuit Court of Kane County (04 CM 6797) of possession of drug paraphernalia and sentenced to 36 days' imprisonment, resulting in one criminal history point pursuant to

Guideline § 4A1.1(c).

v.      On or about March 12, 2007, defendant was convicted in the Circuit Court of Kane County (05 CF 630) of aggravated discharge of a firearm and sentenced to 48 months' imprisonment in IDOC, resulting in three criminal history points pursuant to Guideline § 4A1.1(a).

vi.      On May 16, 2007, defendant was convicted in the Circuit Court of Lake County (07 CM 1386) of violating an order of protection and sentenced to one year supervision, resulting in one criminal history point pursuant to Guideline § 4A1.1(a).

vii.      Defendant committed the instant offense while under a criminal justice sentence, namely, a term of parole from IDOC arising from the conviction set forth in sub-paragraph 10(c)(v) above, resulting in two criminal history points under Guideline § 4A1.1(d).

viii.      Defendant committed the instant offense less than two years after release from imprisonment for an offense counted as part of his criminal history under Guideline § 4A1.1(a), namely, the conviction set forth in sub-paragraph 10(c)(v) above, resulting in one criminal history point under Guideline § 4A1.1(e).

d.      **Anticipated Advisory Sentencing Guidelines Range.** Therefore, based on the facts now known to the government, the anticipated offense level is 29, which, when combined with the anticipated criminal history category of VI, results in an anticipated advisory Sentencing Guidelines range of 151 to 188 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.      Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions

-7-

upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Plea Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f.     Both parties expressly acknowledge that this Plea Agreement is not governed by Fed.R.Crim.P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Plea Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Plea Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

11.     The government is free to recommend whatever sentence it deems appropriate within the applicable guidelines range.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Plea Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not

accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.    The parties further agree, pursuant to Title 18, United States Code, Section 3583(d), that the sentence to be imposed by the Court shall include, as a condition of any term of supervised release or probation imposed in this case, a requirement that defendant repay the United States $1,180 as compensation for government funds that defendant received during the investigation of the case.

14.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

15.    After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

**Presentence Investigation Report/Post-Sentence Supervision**

16.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to the issue of sentencing.

17.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details

-9-

of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

18.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Plea Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Plea Agreement

19.     This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 08 CR 413.

20.     This Plea Agreement concerns criminal liability only. Except as expressly set forth in this Plea Agreement, nothing herein shall constitute a limitation, waiver or release by the United States or any of its agencies of any administrative or judicial civil claim, demand or cause of action it may have against defendant or any other person or entity. The obligations of this Plea Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities, except as expressly set forth in this Plea Agreement.

### Waiver of Rights

21.     Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.      **Trial rights.** Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. Defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without

-11-

cause by exercising peremptory challenges.

iii.     If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately.  The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant.  Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.     At a trial, defendant could present witnesses and other evidence in his own behalf.  If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court.  A defendant is not required to present any evidence.

vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify.  If defendant desired to do so, he could testify in his own behalf.

-12-

b.      **Appellate rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 10 days of the entry of the judgment of conviction.

c.      Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs, with the exception of the appellate rights specifically preserved above. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

<b><u>Other Terms</u></b>

22.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

<b><u>Conclusion</u></b>

23.     Defendant understands that this Plea Agreement will be filed with the Court, will become a matter of public record and may be disclosed to any person.

24.     Defendant understands that his compliance with each part of this Plea Agreement extends throughout the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Plea Agreement. Defendant further understands that in the event he violates this Plea Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Plea Agreement, or

-13-

may move to resentence defendant or require defendant's specific performance of this Plea Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Plea Agreement, or defendant breaches any of its terms and the government elects to void the Plea Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Plea Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of such prosecutions.

25.   Should the judge refuse to accept defendant's plea of guilty, this Plea Agreement shall become null and void and neither party will be bound thereto.

26.   Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Plea Agreement to cause defendant to plead guilty.

-14-

27.     Defendant acknowledges that he has read this Plea Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Plea Agreement.


AGREED THIS DATE: _____September 4, 2008_____


PATRICK J. FITZGERALD
United States Attorney

ABRAM PEREZ
Defendant


TIMOTHY J. CHAPMAN
Assistant United States Attorney

KENT R. CARLSON
Attorney for Defendant


-15-